UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NEMORIO GUZMAN,

        Petitioner,

                                                                                  Case Number 03-50052/08-10709

v.                                                                                 Honorable Thomas L. Ludington

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING PETITIONER'S OBJECTION, AND DISMISSING PETITION WITH PREJUDICE

On July 29, 2004, a jury found Petitioner Nemorio Guzman guilty of two cocaine distribution charges in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2. Case No. 03-50052, dkt. # 61. On November 22, 2004, the Honorable Paul V. Gadola sentenced Petitioner to a term of imprisonment of 121 months. Dkt. # 84. Petitioner appealed to the Sixth Circuit Court of Appeals contending that statements made during voir dire biased the jury panel. On July 6, 2006, the Sixth Circuit affirmed the conviction and the United States Supreme Court denied certiorari on January 22, 2007.

On February 19, 2008, Petitioner moved to vacate the sentence pursuant to 28 U.S.C. § 2255, contending his trial counsel prevented Petitioner from cooperating with the government because his counsel was affiliated with a co-defendant's counsel. Dkt. # 102. The petition acknowledged that the request was untimely and provided the following explanation: "I did not discover, or have any reason to believe, that my attorney had a conflict of interest. I discovered that fact in December 2007." *Id.* at 12.

On referral from this Court, Magistrate Judge Michael H. Hluchaniuk issued an order to show cause why the petition should not be dismissed, reasoning that Petitioner's conviction became

"final" when the Supreme Court denied the request for certiorari and 28 U.S.C. § 2255 required the petition to be filed by January 22, 2008. Dkt. # 105 at 2-3. Petitioner's response asserted that he was unaware of the alleged conflict of interest until December of 2007 when his wife "received information that co-defendant Bustos might have had the same law firm that represented [P]etitioner and through [Petitioner's Wife]'s subsequent investigation, did [P]etitioner become aware of the conflict of interest . . . ." Dkt. # 106 at 1-2. The government's response argues that the record does not support Petitioner's assertion.

On January 26, 2009, Judge Hluchaniuk issued a report and recommendation that the petition be dismissed as untimely. Dkt. # 110. Petitioner timely filed an objection, disputing several of the magistrate judge's conclusions. Dkt. # 111. While Petitioner alleges that he was unaware of material facts, the Court agrees with the magistrate judge's conclusion that Petitioner has not met his burden to support the application of equitable tolling.

A

Petitioner retained Ralph E. Meczyk ("Meczyk") to defend against the narcotics charges. Meczyk shares office space with attorney Lawrence Hyman ("Hyman"). Hyman represented co-defendant Jose Gomez Bustos ("Bustos"); a fact that Petitioner contends he was entirely unaware of until December of 2007. Petitioner alleges that Meczyk hindered him from cooperating with the government because Hyman and Meczyk sought to secure beneficial terms for Bustos's plea agreement. During the course of Meczyk's representation, Petitioner asserts that on three occasions Hyman collaborated with Meczyk concerning Petitioner's case, disclosing confidential information to Hyman.

Petitioner contends that he first met with Hyman soon after his arrest, but was unaware that

Hyman represented Bustos. On September 25, 2003, Petitioner and co-defendants were arraigned. Petitioner contends that he was arraigned separate from other defendants; thus, he did not have an opportunity to observe that Hyman represented Bustos. The government contends that standard practice is to arraign all defendants arising from a common indictment at the same time. While this protocol may be typical, neither party provided relevant transcripts or court records to demonstrate whether all defendants were, in fact, arraigned together. However, the government did incorporate the affidavits of Meczyk and Hyman. Dkt. # 109.

Both acknowledge that each maintains an office within the same office suite, but are not partners or members of the same firm. Moreover, Hyman testified that he "appeared in court with Mr. Bustos when Mr. Meczyk and [Petitioner] were present. Specifically, on September 25, 2003, I appeared before Magistrate Judge Wallace Capel, Jr., with Mr. Bustos for Mr. Bustos' initial appearance and arraignment. [Petitioner] was present in court with Mr. Meczyk for his initial appearance and arraignment." *Id.* at 2. Moreover, Meczyk and Hyman testified that Petitioner personally visited the office suite and would have likely observed that fact that the two shared office space. *Id.* at 2-3.

In any event, Petitioner contends that he desired to cooperate with the government to secure a plea agreement. However, Meczyk convinced him to proceed to trial, which Petitioner describes the circumstance as follows:

> "Meczyk instructed [P]etitioner not to take a plea as there would be no cap on the amount of time [P]etitioner might be sentenced to; and with the evidence the government had, it would be better to go to trial . . . Petitioner believes that the conflict of interest severely prejudiced him through the advice given to him by Meczyk; that Meczyk and Hyman used the attorney-client information gained through their interviews with [P]etitioner to strike a deal for Bustos; and that since [P]etitioner had a little money, a trial was the best way for the law firm to profit;"

Dkt. # 106 at ¶¶10, 12. On January 15, 2004, Bustos entered into a plea agreement with the government and was sentenced to sixty-four months imprisonment. Dkt. # 35. Ultimately, Petitioner received 121 months imprisonment after proceeding to trial.

As discussed above, Petitioner exhausted his appellate remedies on January 22, 2007. Petitioner did not raise Meczyk's alleged conflict of interest on appeal. The petition indicates that Petitioner only began to suspect an improper relationship in December of 2007 when his wife received information that Bustos's counsel may be associated with Meczyk. Dkt. # 106 at 5-6. He provided the following description of events:

> That sometime late in December 2007 through correspondence with my wife . . . she informed me that during one of her recent telephone conversations with her family in Mexico, her family informed her that [Bustos] was serving his sentence somewhere in the Chicago, Illinois area; [her] family further told her that an acquaintance of their family had gotten into some trouble in the Chicago area and that they recommended "the lawyer that had represented Bustos who was his law offices on Washington Street in Chicago;"
>
> As a result of my wife's suspicious December conversation with her family in Mexico, I became suspicious that Bustos had been represented by the same attorney that represented me in our criminal case . . . and wouldn't that be a conflict of interest?
>
> In late December 2007 I asked my wife [] to do some investigating by calling the lawyer's office and checking the internet and to let me know what she found. [My wife] called the lawyers [sic] office and asked if they represented Bustos but they could not give her that information, as [my wife] has no knowledge of or computer skills she asked a friend to check the internet for information.
>
> On or about mid-January 2008 [sic], my wife informed me that a search of the internet found some documents through the PACER system which one is able to obtain court documents. Evidence was found through PACER that showed that Bustos was indeed represented by the same law firm/lawyers that represented me in the case. . . .
>
> I received the above proof [] sometime in late January 2008 by mail from my wife;
>
> I immediately requested a § 2255 motion form from the law library at FPC Oxford,

>    which took approximately 7-10 days to obtain;
>
>    I then promptly began to prepare my argument, type and copy my § 2255 motion; as soon as my wife informed me of her conversations with her family I instructed her to investigate; as soon as I received confirmation and proof of the conflict of interest I began the process of preparing my motion and sending it to the Court.

Dkt. # 106 at 5-6.

B

Petitioner's objection challenges the magistrate judge's interpretation of the record and application of that interpretation to the applicable standards. Petitioner does not challenge the authority relied upon by the magistrate judge or offer contrary authority.

It is undisputed that a petition to vacate a sentence must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The burden rests on Petitioner to demonstrate that equitable tolling is appropriate – a concept that courts "sparingly" apply. *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (citation omitted). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* The Sixth Circuit evaluates the following five factors, if applicable: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Id.*

The magistrate judge determined the first two factors are irrelevant and evaluated Petitioner's diligence in pursuing his rights. *See id.* ("not all factors are relevant in all cases"). The Court agrees with Judge Hluchaniuk that the record does not support Petitioner's contention of due diligence.

First, Petitioner has not met his burden in demonstrating that he did not or should not have

known of the potential conflict of interest. While Petitioner contends that he was unaware of the potential conflict, he alleges that he met with Hyman before the arraignment. Further, Petitioner believed that Hyman and Meczyk represented him in some fashion. Petitioner denies any knowledge of Hyman's representation of Bustos, yet Hyman's sworn affidavit indicates that Hyman and Bustos were present together at the same arraignment as Petitioner. Thus, it appears that Petitioner should have known about the alleged conflict of interest at the time of his arraignment.

Notwithstanding that conclusion, Plaintiff has not demonstrated that he acted with due diligence once discovering the alleged conflict of interest. Plaintiff's motion acknowledged that he became aware of the conflict in December of 2007. While Plaintiff's later filings characterizes his knowledge as a "suspicion," the record does not indicate that he acted with due diligence. First, as the government emphasizes, it is unclear why knowledge of a seemingly innocuous fact that Bustos was represented by an attorney from the same street in Chicago would rouse suspicion. However, Petitioner appreciated that it required further investigation. Petitioner acknowledges that he recognized the conflict to be "a possibility" at that point, but did not take affirmative action such as filing the motion or even requesting the necessary filings from the prison library. Rather, Petitioner contends that "using all the due diligence he could muster under his severely limited capacity and condition, [Petitioner] sought to gather the required evidence to support his claim for relief . . . ." Dkt. # 111 at 3. However, Petitioner was able to confirm his suspicions by having his wife merely obtain a copy of the docket sheet, which is available to the public via the internet. Yet Petitioner does not explain the delay from late December 2007, when his suspicions arose, to January 18, 2008, when his wife obtained confirmation. Moreover, Petitioner acknowledges that he could have had factual confirmation before the one-year limitation expired. Had he prepared his motion upon

suspecting the conflict, he could have filed it once obtaining confirmation by placing the motion in the prison mail system a that time. Consequently, the untimeliness of the motion does not appear to be "unavoidable" based on circumstances outside of the Petitioner's control. *See Vroman*, 346 F.3d at 604.

Second, the Court agrees that Petitioner would have been aware of the ineffective assistance counsel claim well before 2007. As the magistrate judge indicates, a claim for ineffective assistance of counsel requires Petitioner to establish "both the existence of a conflict of interest and that the conflict had an adverse effect on the attorney's performance." Dkt. # 110 at 9 (citing *Moss v. United States*, 323 F.3d 445, 465-66 (6th Cir. 2003)). Petitioner contends that Meczyk "prevented" Petitioner from entering a plea agreement and forced him to proceed to trial. As the magistrate judge recognizes, regardless of Meczyk's motivation, Petitioner would have been aware of attorney misconduct in 2003. Yet, Petitioner did not advance this claim on direct appeal.

C

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [Dkt. # 110] is **ADOPTED**.

It is further **ORDERED** that Plaintiff's Objection [Dkt. # 111] is **OVERRULED**.

It is further **ORDERED** that Petitioner's motion to vacate sentence pursuant to 28 U.S.C. § 2255 [Dkt. # 102] is **DISMISSED WITH PREJUDICE**.

              s/Thomas L. Ludington
              THOMAS L. LUDINGTON
              United States District Judge

Dated: February 18, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 18, 2009.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS